IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | | |
|---|---|---|---|
| FRANCES MARIE FRIDLEY, | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Civil Action No. 5:13-cv-00060 | |
| | ) | | |
| CAROLYN W. COLVIN, | ) | | |
| Acting Commissioner of Social Security, | ) | By: | Joel C. Hoppe |
| Defendant. | ) | | United States Magistrate Judge |

## **REPORT AND RECOMMENDATION**

Plaintiff Frances Marie Fridley brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act (the "Act"). On appeal, Fridley argues that the Administrative Law Judge ("ALJ") erred by failing to consider her statements and her sister's statements regarding her symptoms and limitations, and that the ALJ abused his discretion in examining the vocational expert. After carefully reviewing the record, I find that the Commissioner's decision is not supported by substantial evidence. Accordingly, I **RECOMMEND** that the Commissioner's decision be reversed and the case be remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final determination that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether substantial evidence supports the ALJ's

1

factual findings and whether the ALJ applied the correct legal standards. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence," *id*., but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and if not (5) whether he or she can perform other work. *See* 20 C.F.R. § 416.920(a)(4); *see also Heckler v.*

*Campbell*, 461 U.S. 458, 460–462 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Frances Fridley was born in 1967 (Administrative Record, hereinafter "R." 80.), and at the time of the ALJ's decision was considered a "younger individual" under the Act. 20 C.F.R. § 416.963(b). She has an eighth grade education and is able to read and write. (R. 206, 208.) In the past fifteen years, she has worked as a housekeeper at a motel and a warehouse, as a packer at an orchard, and as a sewing machine operator. (R. 209.) She has not worked since July 2003, and has never had insured status under the Social Security Act. (R. 196, 209.) She alleges that she has been disabled since November 12, 1999,[1] due to several medical conditions including degenerative disc disease, adhesive capsulitis, and depression. (R. 19, 207.) After the agency rejected Fridley's claim initially and on reconsideration (R. 111–122), an ALJ hearing was held at Fridley's request. (R. 28–64.)

The ALJ issued his decision on October 25, 2011. (R. 17–23.) The ALJ found that Fridley had severe impairments of degenerative disc disease involving the cervical spine, possible adhesive capsulitis involving the left shoulder, and depressive disorder. (R. 19.) He found that these impairments did not meet or equal any of the listings, either alone or in combination. (R. 19.)

---

[1] Despite her earlier alleged onset date, Fridley indicated in written statements to the agency that her symptoms became disabling on July 1, 2003. (R. 208).

Next, the ALJ determined that Fridley had the RFC to perform a wide range of light work, with some exertional and non-exertional limitations, including only occasional[2] use of her dominant left arm for reaching, handling, fingering, or grasping. (R. 19-20.) The ALJ based his RFC determination principally on the assessments of a consulting physician and psychologist. (R. 20-22.) He discussed Fridley's own statements regarding her limitations, but made no finding as to her credibility. (R. 20-22.)

The ALJ determined at step 4 that Fridley could not perform any past relevant work. (R. 22.) However, at step 5, the ALJ found Fridley capable of work existing in significant numbers in the national economy, for example, as a laundry folder, cafeteria attendant, and counter clerk. (R. 22-23.) The ALJ based this finding on the testimony of a vocational expert ("VE"). (R. 22-23, 52-63.) Accordingly, the ALJ found Fridley not disabled under the Act. (R. 23.) The Appeals Council denied review on April 12, 2013, and this appeal followed. (R. 1-5.)

### III. Discussion

*A.  The Credibility Determination*

Fridley first argues that the ALJ failed to consider her statements regarding her symptoms and limitations, as well as the corroborating statements of her sister. (Pl. Br. 5–7.) She notes that the ALJ did not cite to any of the "E" exhibits in his decision, and identifies several of her statements regarding her own limitations that the ALJ did not discuss. (Pl. Br. 6–7.)[3] Fridley points out that the ALJ failed to make any explicit credibility findings as to either her or her

---

[2] "'Occasionally' means occurring from very little up to one-third of the time." Social Security Ruling 83-10, 1983 WL 31251, at *5.
[3] In particular, Fridley faults the ALJ for not mentioning her statements and her sister's corroborating statements that she has trouble dressing herself and bathing and has frequent crying spells. (R. 47–48, 223, 234, 241.)

4

sister. (Pl. Br. 7.) Fridley argues that the ALJ's failure to adequately discuss her testimony is particularly serious given the paucity of medical records in this case. (Pl. Br. 5.)

In response, the Commissioner argues that the ALJ "was not required to pay special weight to [Fridley's] statements" but merely to assist her in developing the record by ordering a consultative examination. (Def. Br. 11.) The Commissioner notes that the ALJ did discuss Fridley's subjective complaints, the limited medical records in the case, and Fridley's reports of daily activities and, based on this evidence, "found [Fridley] not entirely credible." (Def. Br. 11–12.) The Commissioner also argues that the ALJ's questioning during the hearing demonstrated his familiarity with the record, including the "E" exhibits. (Def. Br. 11–13.) Finally, the Commissioner argues that the ALJ accounted for Fridley's testimony by relying on the consulting doctors' reports, because those reports were based in part on Fridley's subjective complaints. (Def. Br. 13.)

*1. Relevant Facts*

Fridley offered the following statements and written testimony in this case: she began experiencing back and neck pain in 2000 or 2001 while working at Target. (R. 35.) She had neck surgery in 2001, which allowed her to keep working for a while, but her pain gradually worsened until she had to leave her job. (R. 36, 286.) Fridley stopped working on July 1, 2003, because her back and neck hurt and because she needed to care for elderly family members. (R. 208.)

Fridley suffers from constant throbbing pain and occasional tightness in her back, a stiff neck that hurts when she moves it, stabbing pain in her upper arms, and cramping in her legs. (R. 230, 261, 295–96.) The pain in her back is associated with a bulge near her spine and sometimes radiates into her buttocks, hips, and legs. (R. 230, 293, 295.) Her pain is aggravated by activity and diminished with rest, but her back hurts even when she is sitting (R. 230–31, 260–61.) Her neck hurts when she turns her head down or sideways, and the pain radiates to her

5

shoulders. (R. 36.) At the hearing, Fridley rated her neck pain a six to eight out of ten. (R. 36.) Fridley also suffers from pain in her left arm and is unable to raise it fully. (R. 38.) Fridley's pain limits her ability to bend, stoop, squat, reach, and stand and also interferes with her concentration and ability to finish tasks. (R. 227, 231, 262, 269.) She has taken Advil for her pain on a fairly consistent basis but finds it provides her little relief. (R. 211, 231, 262.)

Fridley began having problems with depression in 2007 when her mother passed away. (R. 38.) She suffers from crying spells at least a couple times per day. (R. 47–48.) Her depression also interferes with her sleep and mental functioning, to the point that she has difficulty focusing long enough to watch an entire TV program. (R. 223, 227, 265, 293.) Despite her problems, Fridley has had relatively little medical or mental health treatment since her surgery because she has no insurance and cannot afford to pay out of pocket. (R. 37, 39, 44.)

Her symptoms prevent her from working full time and doing anything more strenuous than light housework, such as washing dishes and straightening up around the house. (R. 223, 224, 265, 266). Her sister does the yard-work and heavier household chores, including vacuuming. (R. 224, 266.) Fridley's neck and back pain and depression interfere with her sleep. (R. 223, 265.) She finds it painful to wash her hair, bathe, clean herself after using the toilet, and get dressed, because these activities require her to bend, twist, or raise her arms. (R. 223, 247, 265, 294.) Her sister helps her put on shirts. (R. 265.) She prepares her own food, ranging from sandwiches to frozen dinners to complete meals, depending on how she is feeling. (R. 224, 266.) Fridley drives occasionally, but not for long distances, and usually relies on her sister for transportation. (R. 37, 225, 267.) She often visits family members who live two or three miles away. (R. 42–43, 226, 268.) She shops roughly once a week for an hour. (R. 267.) She can walk for 10–15 minutes in the grocery store but must then stop and rest for about 5–10 minutes.

(R. 227, 269.) Less frequently, she goes to Staunton with her 23-year-old son, who lives with her and her sister. (R. 46.) She has no hobbies other than watching TV, although she used to go camping, fishing, swimming, and motorcycle-riding. (R. 43, 226, 268.) She can follow written instructions well but has trouble with verbal instructions, and does not deal well with stress. (R. 227, 228, 269, 270.) She generally performs daily activities slowly and sometimes needs her sister's help. (R. 284–85.) Before her mother passed away in 2007, Fridley and her sister cared for their mother by doing some chores and taking her to and from medical appointments. (R. 49.)

A typical day for Fridley begins between 8:00 and 10:00 AM when she wakes up and, if she has the appetite for it, eats breakfast. (R. 40, 222, 264.) In the morning, she "piddle[s] around" and "tr[ies] to do housework," but often has to take breaks because the chores aggravate her pain. (R. 41, 44, 222, 224, 264.) Sometimes she has lunch, sometimes just a snack. (R. 222, 264.) In the afternoon, she sometimes does more chores, but either sits around and watches TV, or goes outside and sits. (R. 42, 222, 264.) After dinner, she washes the dishes if her sister is not home, watches television, and goes to sleep between midnight and 2:00 AM. (R. 222, 264, 46.)

Fridley's sister, Patricia Campbell, completed two third-party function reports. (R. 232–242, 251–59.) Her statements largely corroborate Fridley's. She indicated that she helps her sister put shirts on, but that Fridley otherwise performs personal care activities on her own. (R. 234, 252.) She also noted that Fridley does only light housekeeping, such as washing dishes and straightening up around the house, and occasionally mows part of the lawn. (R. 235, 253.)

Because Fridley's medical records were so limited, the state agency hired licensed clinical psychologist Joseph Cianciolo and Dr. John Scagnelli, M.D., to perform consulting examinations. (R. 20–21, 343–52.)

On July 29, 2010, Fridley visited Cianciolo for a psychological assessment. (R. 343.) Cianciolo's report indicates that Fridley was alert and fully oriented at the examination. (R. 343.) Her mood appeared to be dysphoric, and her affect was constricted and congruent with her mood. (R. 343.) The examination notes do not disclose any other notable findings. Cianciolo diagnosed major depressive disorder, single episode moderate on Axis I, no diagnosis on Axis II, status post-cervical fusion and chronic pain on Axis III, and "mild" on Axis IV, and assigned a GAF of 60. (R. 344.) He opined that Fridley was capable of simple and repetitive tasks as well as detailed and complex tasks. (R. 344.) Cianciolo indicated that Fridley's ability to maintain regular attendance and complete a normal work week and her ability to interact with co-workers and the public were mildly impaired by her psychiatric condition. (R. 344.) According to Cianciolo, Fridley's ability to cope with routine workplace stressors was "moderately compromised as a function of depressive illness and her attempts to cope with ongoing pain." (R. 345.)

On July 31, 2010, Dr. Scagnelli examined Fridley. Fridley reported a history of depression since 2003 and complained of crying spells, but Dr. Scagnelli opined that he did not think her depression significantly limited her ability to work. (R. 347.) Fridley also complained of neck pain, which she rated a 10 out of 10. (R. 347.) Dr. Scagnelli indicated that Fridley's degenerative joint disease affects her ability to work because bending down hurts her neck. (R. 347.) Dr. Scagnelli's physical examination was largely normal. (R. 348–49.) In particular, Fridley demonstrated normal strength and range of motion and no joint swelling, effusion, or deformity, although she did have some tenderness over her cervical spine. (R. 350.) Dr. Scagnelli noted that Fridley was able to lift, carry, and handle light objects and was able to squat and rise easily. (R. 350.) He also noted that Fridley was able to dress and undress easily. (R. 350.)

Based on his examination, Dr. Scagnelli indicated that he believed Fridley could carry 15 pounds frequently and 25 pounds occasionally and perform all postural activities frequently. (R. 350–51.) However, due to tenderness in her left shoulder residual from her surgery, she could only reach, handle, feel, and grasp with her left arm occasionally. (R. 351.)

The state agency also ordered cervical and lumbosacral spine x-rays. (R. 341–42.) These x-rays showed some degenerative changes in the cervical spine but a normal lumbosacral spine. (R. 341.)

The ALJ's evaluation of Fridley's residual functional capacity spans just over two pages of the record. However, he devoted only one paragraph of his opinion to discussing Fridley's reports of her symptoms:

> The claimant is alleging inability to work secondary to chronic pain involving her neck, left shoulder, and lower back that impairs her ability to lift objects and to tolerate prolonged periods of sitting, standing or walking. She also testified that she has difficulty using her left upper extremity for reaching. In addition to her physical problems, the claimant testified that she has been struggling with depression since the death of her mother in 2007 that was followed by the death of her fiancé some six months later.

The ALJ then discussed Fridley's limited medical records, the consulting examiner reports of Dr. Scagnelli and Cianciolo, and the opinion of Fridley's chiropractor, Dr. Gary Roehl. (R. 20–21.) He noted that he gave Dr. Roehl's opinion little weight,[4] but did not specify the weight he gave to the consulting examiners' reports until the last paragraph of his RFC assessment:

> In reaching this assessment of claimant's functional capacity, the undersigned is accepting the limitations noted by the examining physicians. The Administrative Law Judge finds these assessments to be consistent with the

---

[4] Dr. Roehl opined that Fridley cannot perform sedentary work. (R. 324–35, 353–56.) The ALJ afforded little weight to Dr. Roehl's opinion because it lacked support in his treatment notes and because chiropractors are not acceptable medical sources. (R. 21.) Fridley did not assign this as error on appeal.

objective medical evidence of record and with claimant's activities of daily living that do not support more restrictive functional limitations. It is noteworthy that, at the hearing on this matter, the claimant acknowledged that she left her last job in July 2003 to help care for her mother. For the following four years up until the time of her mother's death in 2007, the claimant would help prepare meals for her mother; she would help with household chores; and she would help with keeping her mother's doctor appointments.

In his decision, the ALJ made no finding as to Fridley's credibility, and did not discuss her testimony beyond the limited passages quoted above. He did not mention Fridley's sister's testimony at all.

2. *Analysis*

In this case, as it would in most, the ALJ's failure to make any finding as to Fridley's credibility constitutes reversible error. "It is well-settled that 'the [Commissioner] must indicate explicitly that all relevant evidence has been weighed and its weight.'" *Payne v. Barnhart*, 366 F. Supp. 2d 391, 401 (W.D. Va. 2005) (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)). Although the ALJ need not cite every piece of possibly relevant evidence in the record, failure to explain the weight given to "'obviously probative exhibits'" is reversible error. *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) (quoting *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977)).

This includes a claimant's statements about symptoms and limitations. As the Fourth Circuit has explained, an ALJ has a "duty of explanation" when making determinations about the credibility of a claimant's testimony. *Smith v. Heckler*, 782 F.2d 1176, 1181 (4th Cir. 1986) (citing *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985)). This duty requires the ALJ to make an express finding as to the claimant's credibility and to give reasons for the credibility determination. *Id.* ("If the ALJ discounted Smith's testimony about lifting and carrying heavy appliances, he needed both to say so and to explain why."); s*ee also Sayre v. Chater*, No. 95-3080, 113 F.3d 1232, at *1 (4th Cir. 1997) (unpublished disposition) ("If an ALJ finds

10

complaints of pain or the magnitude of pain to be incredible, the ALJ must give specific reasons for the finding.") (citing *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985)); *Spencer v. Barnhart*, No. 7:06-cv-00420, 2007 WL 1202865, at *1 (W.D. Va. Apr. 20, 2007) ("If the ALJ discredits the claimant's testimony, he must give 'specific reasons for the finding on credibility….'" (quoting SSR 96-7p)). When an ALJ fails to make any finding as to a claimant's credibility and the claimant's testimony is critical to the outcome of the case, the ALJ's decision is not supported by substantial evidence. *See Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (ALJ must make "an explicit credibility finding … when credibility is critical to the outcome of the case"); *Tieniber v. Heckler*, 720 F.2d 1251, 1254 –55 (11th Cir. 1985) (requiring an express credibility finding unless implication of credibility or non-credibility is "so clear as to amount to a specific credibility finding"); *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1044 (2d Cir. 1984). *But see Haywood v. Sullivan*, 888 F.2d 1463 (5th Cir. 1989) (per curiam) (failure to make explicit credibility findings is harmless if it is fully apparent from the ALJ's decision that he considered and accepted the claimant's statements).

Furthermore, in some circumstances, social security regulations require the ALJ to make a finding regarding the claimant's credibility. When a claimant alleges that pain or other subjective symptoms are disabling, the ALJ must apply the "pain standard," 20 C.F.R. § 416.929. *Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996). This involves a two-step process: First, the ALJ must determine whether objective medical evidence shows "'the existence of a medical impairment which results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 594 (quoting 20 C.F.R. § 416.929(b)). If the claimant has made this showing, the ALJ must then evaluate the intensity and persistence of a claimant's pain and other

11

subjective symptoms, taking into account the claimant's statements along with all of the other evidence in the record. *Id.*; 20 C.F.R. § 416.929(c).

The ALJ's limited discussion of Fridley's own reports of her symptoms in this case is simply inadequate to permit judicial review. He stated no explicit conclusion, much less explained his rationale for reaching that conclusion, about her credibility. As Fridley's attorney pointed out at the hearing (R. 34-35), Fridley's statements are particularly important to this case given the paucity of medical records,[5] and without an express finding as to her credibility, or at the very least a more substantial discussion of her statements, the Court cannot "'tell if significant probative evidence was not credited or simply ignored.'" *Burnett v. Commissioner*, 220 F.3d 112, 122 (3d Cir. 2000) (quoting *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981)).

The ALJ's failure to make a credibility finding also means that he did not properly apply the pain standard in this case. The ALJ recognized that the pain standard applied in this case, (R. 20), but it does not appear that he applied either step. Although he found that Fridley had severe degenerative disc disease, possible adhesive capsulitis[6] of the left shoulder, and depression, he did not say whether these were "objectively determinable medical impairments" that could reasonably be expected to produce Fridley's alleged pain and other subjective symptoms. In *Craig v. Chater*, the Fourth Circuit remanded a case for further administrative proceedings because the ALJ "did not expressly consider the threshold question of whether [the claimant] had demonstrated by objective medical evidence an impairment capable of causing the

---

[5] This is not to say that Fridley's testimony is entitled to any special weight. (*See* Def. Br. 10).
[6] Adhesive capsulitis is "adhesive inflammation between the joint capsule and the peripheral articular cartilage of the shoulder with obliteration of the subdeltiod bursa, characterized by shoulder pain of gradual onset, with increasing pain, stiffness, and limitation of motion. Dorland's Illustrated Medical Dictionary 286 (32d ed. 2012).

12

degree and type of pain she allege[d]" but "proceeded directly to considering the credibility of [the claimant's] subjective allegations of pain." 76 F.3d at 596. Here, although the ALJ found that Fridley suffered from severe (and possibly painful) impairments, he did not determine whether Fridley had objectively determinable medical impairments capable of producing the symptoms alleged, and he made no express credibility determination. By skipping both "steps" of the analysis, the ALJ did not apply the correct legal standard. *Lester v. Astrue*, Civ. No. 5:10-00380, 2011 WL 4344019, at *14 (S.D.W. Va. Aug. 19, 2011) (citing *Arnold v. Barnhart*, Civ. No. 1:04-0422, at 11 (S.D.W. Va. Sept. 29, 2005)).

The Commissioner argues that the ALJ's questioning during the hearing demonstrated his familiarity with the record, including the "E" exhibits. (Def. Br. 11–13). The questions the ALJ asked at the hearing demonstrate that he had read the exhibits, but the Court does not review the hearing transcript to see whether the ALJ has read the case record. Rather, it reviews the ALJ's decision—which must be in writing, *see* 20 C.F.R. § 416.1453—to see whether it is supported by substantial evidence. The Commissioner cites no authority to support the proposition that the ALJ's familiarity with the record can cure a failure to adequately evaluate a claimant's own statements, assess the claimant's credibility, and explain his credibility findings in rendering his decision.

The Commissioner also argues that the ALJ accounted for Fridley's testimony by relying on the consulting examiners' reports because the examiners considered Fridley's subjective complaints and determined that she had an RFC that was inconsistent with her complaints. Thus, by adopting their findings, the ALJ also implicitly discredited Fridley's subjective complaints. (Def. Br. 13.) The Commissioner cites no authority for this argument. Contrary to the Commissioner's argument, an ALJ may not dispose of a claimant's statements without

explanation or an explicit credibility finding by simply adopting a consulting physician's report that was based in part on those statements. *See Spencer*, 2007 WL 1202865, at *1-2 (must explain credibility determination); *see also* 20 C.F.R. § 404.1527(d)(2), (e) (ALJs will consider consulting examiner reports, but are responsible for making findings of fact and conclusions of law on issues reserved to the Commissioner, such as a claimant's RFC).

Finally, at the hearing, the Commissioner argued that the ALJ's decision clearly reflects that he considered Fridley's testimony and found it not entirely credible. Therefore, the Commissioner contends, any error is harmless, because the Court can infer an adverse credibility determination from the ALJ's acceptance of other conflicting evidence and his ultimate decision to deny benefits. This argument fails because it is not enough for the ALJ to state that a claimant is not credible—he must explain *why* he finds her not credible. *Hammond*, 765 F.2d at 426; *Spencer*, 2007 WL 1202865, at *1. The reason why the Court may not supply the missing rationale for, as the Commissioner suggests, an agency's implicit conclusion is that such an act by the Court would violate the *Chenery* doctrine, which allows reviewing courts to affirm agency determinations only on the grounds provided by the agency. *Cunningham v. Harris*, 658 F.2d 239, 244 n. 3 (4th Cir. 1981) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 94–95 (1943)); *see also Ai Hua Chen v. Holder*, 742 F.3d 171, 180 (2014) ("[T]he [agency] has not revealed its reasoning, and we are not permitted to guess what [it was] thinking.").

Moreover, the ALJ's error in failing to assess Fridley's credibility was not harmless in this case. Fridley's testimony was not outrageous or incredible, and a reasonable ALJ could have accepted it. At the hearing, the vocational expert testified that someone with Fridley's claimed limitations would be incapable of substantial gainful employment. (R. 58–59.) Thus, if the ALJ found Fridley fully credible, he would also have to find her disabled. Remand is therefore

required to allow the ALJ to apply the pain standard and evaluate the credibility of Fridley's testimony and written statements.

B.     *Vocational Expert's Testimony*

Fridley also argues that the ALJ abused his discretion at the hearing by cutting off the VE when he was about to give unfavorable testimony and walking through the hypothetical again. (Pl. Br. 7–9). The Commissioner replies that the ALJ's questioning was reasonable and the ALJ did not abuse his discretion or improperly elicit testimony from the VE. (Def. Br. 14–15).

Because I find that the ALJ's failure to evaluate Fridley's credibility requires remand, I will not address this issue at length. I doubt that the ALJ's line of questioning at the hearing constituted an abuse of the broad discretion ALJs enjoy in conducting hearings. *See Richardson v. Perales*, 402 U.S. 389, 400–01 (1971). However, the VE's testimony and the ALJ's reliance on it present some close issues such that it would be prudent on remand for the Commissioner to elicit new testimony from a VE.

First, the manner in which the ALJ questioned the VE was confusing. Initially, rather than presenting a hypothetical, the ALJ asked the VE to review the limitations set out in two exhibits. (R. 53–54). As one court observed, "[t]his practice is a minefield for misunderstanding between the ALJ and the vocational expert and has the potential for creating unnecessary uncertainty for the court on review." *Taylor v. Colvin*, No. 12-CV-412-FHM, 2013 WL 4544262, at *3 (N.D. Okla. Aug. 27, 2013). Although the ALJ later spelled out with more specificity the limitations identified and not identified in the exhibits, the transcript reflects that the VE was at times confused by the exhibits and the hypothetical. (R. 62–63.) Furthermore, the VE and ALJ repeatedly talked over each other, making their statements difficult to follow.

Second, the vocational expert arguably changed his mind regarding the availability of jobs for an individual capable of light, unskilled work but limited to occasional use of the

15

dominant arm. (R. 54, 58.) The ALJ did not address the apparent inconsistency in his opinion. Other courts have remanded cases in which vocational experts have offered inconsistent opinions. *Sanders v. Colvin*, No. 6:12-3322-DGK-SSA, 2013 WL 5366977, at *4 (W.D. Mo. Sept. 25, 2013) (finding error at step 5 where "the VE changed his mind and repeatedly qualified his answers" in response to ALJ's hypotheticals); *Howard v. Commissioner*, No. Civ. A. 04-5286, 2006 WL 328403, at *2 (E.D. Pa. Feb. 10, 2006) (noting, in order denying EAJA fees, that the court had remanded the case to the commissioner to "clarify" inconsistency created when VE changed his mind during hearing and ALJ did not mention inconsistent testimony in his decision); *see also Goelling v. Astrue*, No. 7:09cv00225, 2010 WL 3733538, at *9 (W.D. Va. Aug. 30, 2010) (Urbanksi, J.) ("On this record, the court simply cannot say that the ALJ's decision is supported by substantial evidence. The VE is all over the board on this issue, and his testimony is incapable of producing a reliable assessment as to Goelling's work opportunities."); *Summerall v. Astrue*, No. 5:06-cv-270-Oc-10GRJ, 2008 WL 1819440, at *1 (M.D. Fla. Apr. 23, 2008) (remanding because of unclear point in vocational expert's testimony); *Lugo v. Chater*, 932 F. Supp. 497, 504 (S.D.N.Y. 1996) (Sotomayor, J.) ("The exchange between the ALJ and the vocational expert was hopelessly muddled, forming an unacceptable basis for the ALJ's decision regarding Lugo's disabilities and capacity for substantial employment. On remand, the ALJ must pose accurate hypothetical examples to the vocational expert and make sure that he and the vocational expert are talking about the same hypothetical at the same time.").

## IV. Conclusion

Just as it is not this Court's province to disturb an ALJ's credibility determination when it is supported by substantial evidence, the Court also may not make a credibility finding in the first instance when the ALJ failed to do so. Although procedural perfection is not expected or required, in this case, it was incumbent upon the ALJ to state a credibility finding and explain his

reasons for the finding, a duty he recognized (*see* R. 20). I recommend the case be remanded to afford the ALJ an opportunity to make a written credibility finding and explain such finding and take any other steps necessary to resolve Fridley's disability claim.

For the foregoing reasons, I respectfully recommend that the Commissioner's Motion for Summary Judgment (ECF No. 19) be denied, the final decision of the Commissioner be reversed, and the case be remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record.

        ENTER: May 12, 2014

        */s/ Joel C. Hoppe*

        Joel C. Hoppe
        United States Magistrate Judge